IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                           No. CR 03-2274 JB

JOHN GOULD
VAN TYLER FRAEMBS
CHRISTOPHER TAGERT

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Motion for Downward Departure for Defendants Van Tyler Fraembs and Christopher Tagert, filed June 11, 2007 (Doc. 364)("United States' Motion"); and (ii) Defendant Tagert's Sentencing Memorandum, filed June 19, 2007 (Doc. 365)("Tagert's Memo"). The Court held a sentencing hearing on June 25, 2007. The primary issues are: (i) whether the Court should grant Defendants Van Tyler Fraembs and Christopher Tagert downward departures pursuant to U.S.S.G. § 5K1.1, because they provided substantial assistance in the prosecution of Defendant John Gould; and (ii) whether, in addition to any downward departure Fraembs and Tagert may receive, the Court should grant Fraembs and Tagert downward variances pursuant to its authority under United States v. Booker, 543 U.S. 220 (2005). Because the Court finds that Fraembs and Tagert provided substantial assistance in the prosecution of Gould, who was convicted at trial of civil rights and obstruction of justice crimes, the Court will grant them downward departures pursuant to § 5K1.1. Because the Court concludes that the various factors set forth in 18 U.S.C. § 3553(a) counsel in favor of granting a variance from the sentences that the Guidelines recommend, the Court will also grant Fraembs and Tagert downward variances, though

not to the extent that they request.

## FACTUAL BACKGROUND

On October 16, 2002, Tampico V., an individual incarcerated at the Dona Ana County Detention Center in Las Cruces, New Mexico, refused to move voluntarily from a cell in a segregation unit back to general population. See Pre-sentence Investigation Report for Van Tyler Fraembs ¶ 13, at 5, disclosed June 29, 2005 ("Fraembs PSR"). The detention officers attempting to transfer Tampico V., Craig Kiehne and Daniel Avila, radioed Gould, who was the floor commander of the afternoon shift, and informed him that Tampico V. was refusing to move. See id. ¶¶ 13,14, at 5. At that time, Gould ordered Kiehne and Avila to stand by and wait for him. See id. ¶ 14, at 5.

In the meantime, detention officers Fraembs, Tagert, and Ernesto Hernandez, all of whom had heard of Tampico V.'s refusal to move over the radio, arrived at the cell in which he was being held. See id. ¶ 15, at 5-6. Eventually, Tagert attempted to remove Tampico V. from the cell in the segregation unit physically. See id. ¶ 16, at 6. Avila, Kiehne, Hernandez, and Fraembs joined in to assist Tagert. See id. Detention officer Brian Baker placed an "officer needs assistance" call for Tampico V.'s cell over the radio. See id. ¶ 17, at 6. The detention officers succeeded in pulling Tampico V. to the floor and turning him over onto his stomach. See id. Tampico V. continued, however, to refuse to voluntarily surrender his arms to be cuffed. See id. While Avila, Kiehne, Hernandez, and Baker controlled Tampico V.'s head and limbs, Fraembs and Tagert repeatedly knee-dropped and punched his back and sides. See id.

When Gould arrived at Tampico V.'s cell, Tampico V. was on his stomach, and all of his limbs were controlled. See id. ¶ 18, at 6-7. Gould sprayed Tampico V. in the face with pepper spray from a very short distance and slammed his head against the cell's concrete floor. See id. Shortly

thereafter, Fraembs pulled Tampico V.'s arm in an attempt to cuff it, and it made a loud cracking sound.  See id.  Once Tampico V. was placed in restraints, Fraembs, Tagert, Kiehne, and Avila carried him to the medical unit.  See id. ¶ 19, at 7.  While in route, Tagert pushed Tampico V.'s head into door frames and kicked him in the head.  See id.

After being examined in the medical unit, Tampico V. was transferred to an outside medical facility.  See id. ¶ 20, at 7.  In that facility, it was determined that Tampico V. had suffered a displaced fracture of his left elbow, a fractured shoulder blade, three broken ribs, a subconjunctivial hemorrhage in his left eye, and bruises and abrasions.  See id.

In their post-incident reports and conversations with federal investigators, Fraembs and Tagert falsely stated that Tampico V. was very aggressive and combative, and that he had attempted to strike detention officers.  See id. ¶¶ 22-23 at 7-8.  Fraembs and Tagert also failed to disclose their questionable/wrongful actions and those of their fellow detention officers.  See id.

**PROCEDURAL BACKGROUND**

On November 13, 2003, a federal grand jury returned an Indictment against Gould, Tagert, and Fraembs.  See Indictment, filed November 13, 2003 (Doc. 1).  Count One of the Indictment charged each Defendant with violating 18 U.S.C. § 242, deprivation of rights under color of law, for their respective roles in the incident involving Tampico V.  See Indictment at 1-2.  Count Two of the Indictment charged Tagert with a separate violation of § 242 for the additional actions he took against Tampico V. as he was carried to the medical unit.  See Indictment at 2-3.  Counts Three, Four, and Five of the Indictment charged Gould, Tagert, and Fraembs, respectively, with witness tampering, in violation of 18 U.S.C. § 1512(b)(3), for falsifying their post-incident reports.  See Indictment at 3-5.

Fraembs and Tagert were arraigned on November 26, 2003, and entered pleas of not guilty.

See Clerk's Minutes, filed November 26, 2003 (Doc. 6); United States' Motion at 1. Gould was arraigned on December 4, 2003, and also entered a not guilty plea. See Clerk's Minutes, filed December 4, 2003 (Doc. 17).

On June 24, 2004, Fraembs pled guilty to Count One of the Indictment pursuant to a plea agreement with the United States. See Plea Agreement of Defendant Van Tyler Fraembs at 2, filed June 24, 2004 (Doc. 72). Tagert did likewise on July 19, 2004. See Plea Agreement of Defendant Christopher Tagert at 2, filed July 19, 2004 (Doc. 82).

On August 25, 2004, the grand jury returned a Superseding Indictment against Gould. See Superseding Indictment, filed August 25, 2004 (Doc. 91). The Superseding Indictment added another count against Gould for violating § 242. See Superseding Indictment at 3. This additional count related to a March 22, 2004 incident involving James Barber at the Cibola County Detention Center in Grants, New Mexico. See id. The Superseding Indictment also charged Gould with another count of violating § 1512(b)(3) for his falsification of a report relating to the Barber incident. See Superseding Indictment at 3-4.

On May 13, 2005, Gould pled guilty to the counts in the Superseding Indictment charging him with violating § 1512(b)(3) in relation to the Tampico V. incident and with violating § 242 in relation to the Barber incident. See Clerk's Minutes, filed May 13, 2005 (Doc. 137). Gould later withdrew his guilty plea, see Defendant John Gould's Motion to Withdraw Guilty Plea with Authorities, filed August 23, 2005 (Doc. 151), Order, filed May 25, 2006 (Doc. 179), and, in March 2007, was tried before a jury on the counts charged against him in the Superseding Indictment, see Transcript of Jury Trial Proceedings (taken March 20-30, 2007). Fraembs and Tagert testified against Gould at trial in accordance with their plea agreements. See id. at 231:2-278:5 (Fraembs)(taken March 22, 2006); id. at 118:15-215:23 (Tagert)(taken March 22, 2006). The jury

found Gould guilty of all the charges brought against him.  <u>See</u> Verdict, filed April 2, 2007 (Doc. 336).

The United States Probation Office ("USPO") considered the applicable Guidelines and, for Fraembs and Tagert, recommended total-offense levels of 30, with criminal-history categories of I, for advisory imprisonment ranges of 97 to 120 months.  <u>See</u> Fraembs' PSR ¶¶ 46, 49, 71, at 13, 14, 19; Pre-sentence Investigation Report for Christopher Tagert ¶¶ 46, 49, 78, at 14, 22, disclosed June 29, 2005.

The United States moves the Court, pursuant to § 5K1.1, to depart downward from the advisory Guidelines' sentencing range applicable to Fraembs and Tagert.  <u>See</u> United States' Motion at 1.  The United States requests that the Court depart downward from the Guidelines' range "by a degree that fairly and justly balances [Fraembs' and Tagert's] culpability and the assistance that they provided in the investigation and prosecution of [] Gould."  <u>Id.</u> at 4.  The United States recommends that Fraembs and Tagert be sentenced to a term of imprisonment of between 24 and 36 months.  <u>See</u> <u>id.</u> at 4.

On June 19, 2007, Tagert filed his Sentencing Memorandum, requesting that the Court vary downward further from the 24 to 36 month imprisonment range the United States recommends to a period of probation.  <u>See</u> Tagert's Memo at 1.  At the June 25, 2007 hearing, Fraembs' counsel orally moved the Court to grant Fraembs the same variance Tagert seeks in his written filing, probation.  <u>See</u> Transcript of Hearing at 13:21-14:6 (Crutchfield)(taken June 25, 2007).[1]  The United States represented that it was on constructive notice that Fraembs would be seeking a variance and did not object to the timing or oral nature of the request.  <u>See</u> <u>id.</u> at 23:25-24:5 (Rice).

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

## U.S.S.G. § 5K1.1

U.S.S.G. § 5K1.1 permits a court to depart from the Guidelines where the defendant has provided substantial assistance to authorities.  Section 5K1.1 provides:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
>> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>>
>> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>>
>> (3) the nature and extent of the defendant's assistance;
>>
>> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>>
>> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1.

## LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United States' holding in United States v. Booker, "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." Id. at 245-46.  Under the new advisory Guidelines' scheme, "district courts have a freer hand in determining sentences." United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005).  Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." Id.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference. See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant because "the

Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them.

In Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing. See 543 U.S. at 246. To conform with Congressional intent, sentences must be "reasonable." Id. at 260-61. Consistent with that recognition, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness. See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006). First, the Tenth Circuit reviews the district court's consideration of the applicable Guidelines' range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable." Id. Second, once this presumption is established, "[t]he presumption can be rebutted by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a)." United States v. Dazey, No. 05-6258, 2007 U.S. App. LEXIS 15547, at *27 (10th Cir. June 27, 2007).

On the other hand, criminal sentences that vary materially from the properly calculated Guidelines' sentencing range are not accorded a presumption of reasonableness. See United States v. Cage, 451 F.3d at 594-95. The Tenth Circuit has explained that "the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance." Rita v. United States, 127 S. Ct. At 2467 (citing United States v. Bishop, 469 F.3d 896, 907 (10th

Cir. 2006)).[2]

Finally, the Supreme Court has recently explained that the presumption of reasonableness afforded Guidelines' sentences is "an appellate court presumption" and emphasized that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Rita v. United States, 127 S. Ct. at 2465. More specifically, "[a] nonbinding appellate presumption that a Guidelines sentence is reasonable does not require the sentencing judge to impose that sentence." Id. at 2466 (emphasis in original).

## ANALYSIS

The Court has carefully reviewed and addressed each of the factors set forth in § 5K1.1. The Court will depart downward pursuant to § 5K1.1 as the United States recommends. The Court has also carefully reviewed and addressed each of the factors set forth in § 3553(a). The Court will also grant Fraembs and Tagert variances pursuant to its authority under United States v. Booker. The Court will not, however, vary from the advisory Guidelines' sentence to the extent that Fraembs and Tagert request.

**I.     THE COURT WILL DEPART DOWNWARD PURSUANT TO § 5K1.1.**

The Court believes that Fraembs and Tagert qualify for downward departures under § 5K1.1(a). First, the United States represents, see United States' Motion at 2, and the Court observed at trial, that Fraembs' and Tagert's assistance was significant and useful. During their testimony,

---

[2] In its June 21, 2007 opinion in Rita v. United States, the Supreme Court indicated that it will evaluate the Tenth Circuit's approach next term in United States v. Gall, No. 06-7949. Rita v. United States, 127 S. Ct. at 2467 (citing United States v. Bishop, 469 F.3d at 907, and cases from the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits). The Supreme Court cautioned, however, that "[t]he fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness" for sentences that fall outside the Guidelines' range. Rita v. United States, 127 S. Ct. at 2467.

Fraembs and Tagert were cooperative and respectful towards both the United States and defense counsel. Fraembs and Tagert explained their plea agreements, they answered every question put to them at trial, and they were respectful of the Court, counsel, and the jury. Given their significant involvement with the Tampico V. incident, Fraembs' and Tagert's testimony against Gould was particularly valuable and persuasive. The United States submits that Fraembs' and Tagert's testimony was essential to the success of its case at trial. See id. at 3. The Court also notes that Fraembs and Tagert accepted responsibility for their involvement in the Tampico V. incident and showed remorse for their actions.

Second, the United States asserts, and the Court has been given no reason to doubt, that Fraembs' and Tagert's trial testimony, and Fraembs' grand jury testimony, was truthful and reliable. See id. at 3. Third, the United States maintains, and the Court has been given no reason to challenge, that the nature of Fraembs' and Tagert's assistance, and the extent of their assistance, consisted of submitting to interviews with federal agents and testifying against Gould at trial. Additionally, Fraembs provided testimony to the Grand Jury about Gould's wrongdoing. Fourth, the United States represents that it is not aware of any risk to Fraembs and Tagert, or to their families, as a result of their assistance. Finally, the assistance that Fraembs and Tagert provided was sufficiently timely to enable the United States to indict Gould and try him successfully.

While § 5K1.1's fourth factor -- danger, risk, or injury resulting from the assistance provided -- does not counsel in favor of the Court departing downward, the Court believes that each of § 5K1.1's other factors does. The Court also notes that, in color-of-law cases, testimony from former officers describing other officers' misconduct is invaluable, and that such cooperation is generally difficult to obtain, because of the pressure placed on law-enforcement officers not to "rat out" other officers, and because of the status and power officers stand to lose from admitting their misconduct.

The Court will grant Fraembs and Tagert downward departures that lower their sentencing ranges to 24 to 36 months, as the United States recommends.

## II.     THE COURT WILL VARY DOWNWARD PURSUANT TO UNITED STATES V. BOOKER.

While the Court finds that Fraembs and Tagert should be granted downward departures as the United States requests, the Court will also grant Fraembs and Tagert variances from the sentences that the Guidelines recommend. The Court concludes that a sentence of 8 months imprisonment is sufficient without being greater than necessary to comply with the purposes enumerated in § 3553(a)(2).

In reaching its conclusion, the Court has considered all of the relevant information before it. The Court acknowledges that Gould may have created an aggressive working environment in which incidents, such as those involving Tampico V., were more likely to occur. See United States' Motion at 3-4. The Court also recognizes that, as a result of their decision to plead guilty, Fraembs' and Tagert's employment were significantly impacted. Fraembs lost his new job as a deputy sheriff, which it had long been his professional goal to become. See id. at 4. Tagert was fired from his position at the Dona Ana County Detention Center. See id.

Moreover, the Court acknowledges that Fraembs and Tagert have worked hard to put the Tampico V. incident behind them. Fraembs is planning to marry, see Transcript at 13:4-6 (Crutchfield), and Tagert is aiding his ill mother and caring for his young children, see Tagert's Memo at 4-6. The Court notes that Fraembs has offered to speak to law-enforcement and correction officers about his experience so that they may learn how to avoid becoming involved in similar situations. See Transcript at 21:14-22:9 (Crutchfield). The Court also notes that Fraembs and Tagert accepted responsibility for their actions and omissions, demonstrated remorse, and assisted

authorities. See United States' Motion at 2-3. The Court believes these circumstances show a marked change in the lives of Fraembs and Tagert. The Court does not believe that Fraembs and Tagert are likely to engage in criminal activity in the future. The Court believes that Fraembs and Tagert have returned to being good citizens and have developed a better perspective of what is required of them.

Having considered that information in the context of the purposes set forth in § 3553(a)(2), the Court finds that, for both Fraembs and Tagert, varying from sentences of 24 to 36 months to sentences of 8 months is appropriate and reasonable. The Court believes that it is significant that Fraembs and Tagert committed these civil-rights violations after swearing to uphold the law, and that Congress and the Sentencing Commission, with the penalties they have fashioned, have demonstrated how seriously they believe such color-of-law offenses should be treated. The Court also believes that the violent nature of the offenses -- committed as they were against a vulnerable and restrained individual -- is significant. The Court notes, moreover, that it must still sentence Gould and that he is eligible to receive a lengthy sentence, and that it has an interest in achieving some degree of uniformity in sentencing between Defendants involved in the same incident and accused of the same crimes. The Court believes that those circumstances counsel against sentencing Fraembs and Tagert to probation as they request. The Court concludes, rather, that sentences of 8 months reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the Defendants. While the Court believes that some incarceration is necessary given the seriousness of their crime, the Court believes that prison time beyond 8 months is unnecessary to achieve federal sentencing objectives.

**IT IS ORDERED** that the United States' Motion for Downward Departure for Defendants

Van Tyler Fraembs and Christopher Tagert is granted. Fraembs' and Tagert's requests for additional downward variances are granted in part and denied in part. The Court sentences Fraembs and Tagert each to 8 months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Larry Gomez
　Acting United States Attorney
Albuquerque, New Mexico

-- and --

Mark Blumberg
J. Evans Rice III
　Trial Attorneys
United States Department
　of Justice
Civil Rights Division, Criminal Section
Washington, D.C.

　　*Attorneys for the Plaintiff*

C. Barry Crutchfield
Lovington, New Mexico

　　*Attorney for Defendant Van Tyler Fraembs*

Jacquelyn Robins
Albuquerque, New Mexico

　　*Attorney for Defendant Christopher Tagert*